UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ASI LLOYDS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-1214** |
| **MICHAEL LYTELL, ET AL.** | **SECTION "L" (2)** |

**ORDER & REASONS**

The Court has pending before it Plaintiff ASI Lloyds' motion for summary judgment (Rec. Doc. 23). The Court has reviewed the materials and the applicable law and now issues this Order and Reasons.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

This case arises from water damage to residential property insured by a homeowners policy issued by ASI Lloyds. ASI brought this action seeking a declaratory judgment as to the coverage of the policy. ASI insured property in Madisonville, Louisiana owned by Michael Lytell and Anngelle Savoie ("the insureds"). An uninsulated copper pipe leading from the attic water heater burst in January, 2010, which caused water to leak for ten to fourteen days and severely damage the property. The pipe burst in several locations. The insureds were in the process of moving some of their personal property into the house, which was unoccupied at the time of the loss. ASI contends that sustained freezing weather caused water in the system to freeze and burst the pipe, and that the loss falls within a coverage exclusion in the policy. The insureds deny that the coverage exclusions apply. They assert that they timely submitted satisfactory proof of loss and that ASI has failed to pay the claim. ASI filed a declaratory

judgment action against the insureds, and the insureds counter-claimed for breach of the insurance contract.

ASI filed a first motion for summary judgment on July 15, 2010. The insureds opposed the motion and argued that they needed an opportunity to obtain an expert report regarding the cause of the burst pipes. After a status conference with the parties on August 5, the Court denied ASI's motion as premature with leave to file again after 90 days to permit the parties an opportunity for expert discovery. (Rec. Doc. 22). ASI filed a second motion for summary judgment on November 16, 2010. ASI again contends that The Court granted motions to extend the deadlines for expert disclosure and to continue ASI's motion, ultimately setting the motion for submission on February 2, 2011. On February 1, 2011, the day before its motion for summary judgment was noticed for submission, ASI sought leave to file a reply memorandum. The insureds opposed the request for leave because the proposed reply contained new arguments based on an expert report that was not yet part of the record. The Court granted leave to file the reply memorandum and allowed the insureds additional time to respond to the new arguments. Plaintiffs have responded, and the matter is fully briefed.

In the present motion, ASI argues that there is no genuine dispute that the pipe burst because it froze and that the insureds failed to take reasonable care to maintain heat in the property or to shut off the water supply. Therefore, ASI contends that the loss is excluded pursuant to an exclusion in the policy.

The insureds respond that summary judgment should be denied because ASI has not carried its burden to show that temperatures in the attic were below freezing for a sufficient period of time or that the pipe burst due to freezing. Additionally, the insureds argue that the freeze exclusion cannot be enforced against them because it was not specifically brought to their

attention.

**II.     LAW & ANALYSIS**

**A.     Summary Judgment Standard**

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24, and Fed. R. Civ. P. 56). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B.     Coverage**

"Under Louisiana law, the insured must prove that the claim is covered by the policy.

Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage." *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). Neither party disputes that the water damage to the insureds' home is a sudden accidental direct physical loss covered under the policy. Accordingly, the burden is on ASI to show that the loss was due to an excluded cause. ASI relies on the following policy exclusion which excludes damage from frozen pipes if the insured does not either keep heat on in the building or shut off the water and drain the system:

> SECTION 1 – PERILS INSURED AGAINST
> A. Coverage A – Dwelling And Coverage B – Other Structures
> 1.    We insure for sudden and accidental direct physical loss to property described in Coverages A and B.
> 2.    We do not insure, however, for loss:
> ....
> c.    Caused by:
> (1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage, or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:
> (a) Maintain heat in the building; or
> (b) Shut off the water supply and drain all systems and appliances of water.

The parties do not dispute that the exclusion is unambiguous. The parties also do not dispute that the insureds did not take reasonable care to maintain heat in the building or shut off and drain the water supply.

Thus, the critical factual question is whether the pipe burst due to freezing. The parties have submitted expert opinions on that question. ASI has retained Leonard C. Quick, P.E., and the insureds have retained Neil B. Hall, Ph.D, to opine regarding causation.[1]

---

[1] ASI also cites an invoice from a plumber hired by the insureds after the accident, which states that the plumber "found freeze damaged piping that flooded house." (Rec. Doc. 21-1 at 1). In the absence of an affidavit from the individual who inspected the house, the invoice is hearsay

4

ASI's expert Mr. Quick professes "extensive experience and qualifications ... in the practice of forensic engineering, including investigations of water pipe freeze damage that number somewhere in the dozens to hundreds." He inspected the property and the pipes on December 7, 2010. He also reviewed temperature data for two National Oceanic and Atmospheric Administration reporting stations in Slidell and Hammond, which are "the official sources for this area (including Madisonville, La)." Those records indicated lows between 21 and 32 degrees Fahrenheit in Hammond from January 9 to January 14, 2010, and lows between 19 and 32 degrees Fahrenheit in Slidell from January 9 to January 13, 2010. On the basis of his experience, his physical examination of the pipes and the house, and the data regarding local temperatures in January, 2010, Mr. Quick unequivocally concludes that "Splits in the copper water supply line in the attic of the dwelling is a direct result of freeze damage during extended harsh freezing conditions for this location." He also stated that the pipes were "'text book' for the manner of freeze damage mechanics and appearance for copper water lines."

Plaintiffs counter with a report prepared from Neil B. Hall. Mr. Hall is an architect and civil engineer with an educational background in architecture, landscape architecture, systems management, and a Ph.D in urban studies. Mr. Hall examined the damaged home and burst pipes, as well as weather records relied on by ASI. In his first report, Mr. Hall concludes that he cannot say what caused the pipe to burst:

> From the available facts it is not possible to conclude what caused the pipe to burst, including whether the pipe burst due to freezing temperatures. Additional study (such as hydrostatic testing to ensure that the pipe is capable of resisting design pressures and research into product recalls for copper pipe) is recommended to reach a final determination as to the exact cause of rupture.

Mr. Hall also draws attention to a bend in the pipe, which he opines was not made in accordance

---

and not competent summary judgment evidence.

with industry standards, "restricted the interior diameter of the pipe" and "may have contributed to the rupture." Mr. Hall further opines that, although the pipe was uninsulated and the house was unheated, the fact that the pipe was inside and sheltered from wind would have slowed the rate at which the temperature inside the attic dropped. Finally, Mr. Hall disputes whether temperature readings in Hammond and Slidell are relevant to the temperature in Madisonville. Despite these critiques of Mr. Quick's report, Mr. Hall does not contend that the pipes did not burst due to freezing or otherwise opine regarding what actually caused the damage, though he acknowledges that"[c]ertainly frozen water is on my 'short list.'"

Mr. Quick and Mr. Hall have also had an opportunity to review and comment on the other's conclusions. Mr. Quick rejects the contention that additional testing is necessary to rule out other causes for the burst pipes because "[i]t is indisputable that the failure mechanism of the subject copper water line" was freeze damage. Mr. Quick criticizes Mr. Hall's emphasis on the "bend" in the copper pipe; Mr. Quick states that the bend is in fact an area between two bulges in the pipe, and further refers to research studies stating that a bend actually gives a pipe greater resistance to bending (though Mr. Quick does not cite those studies). On the other hand, Mr. Hall observes that he could not locate the source of five photographs offered by Mr. Quick to demonstrate examples of typical damage to copper pipes from freezing.[2] Mr. Hall also criticizes Mr. Quick for failing to remove the pipe to physically examine the interior or conduct a chemical analysis for weaknesses or corrosion. Neither party has moved to exclude the other's witness for failing to meet the requirements of Federal Rule of Evidence 702.

On this record, ASI has met its initial burden under Rule 56 to show that there is no

---

[2] ASI Lloyds sought and received leave to supplement Mr. Quick's report by explaining the source of those photos, which are available on various websites.

genuine dispute of fact regarding the cause of the burst pipe.  Mr. Quick unequivocally opines that the damage to the pipe is completely consistent with freeze damage, and he buttresses this with impartial data demonstrating that nearby weather stations recorded sustained below-freezing temperatures at the time the house was vacant and unheated.  This opinion testimony would be sufficient to carry ASI's burden under Louisiana law to show that there is no genuine dispute that the loss was caused by an excluded cause.

The burden therefore shifts to the insureds to come forward with some affirmative evidence showing that there is a genuine dispute regarding the cause of the burst pipe.  Keeping in mind that ASI will have the ultimate burden of proof at trial on the causation question, the Court concludes that the insureds have met their burden, albeit barely.  Although Mr. Hall does not exclude freezing as a possibility or opine that it is less likely than any other cause, he does articulate alternative causes.  Mr. Hall has not conducted any tests to establish the probability of some of those causes, such as the possibility of microbial corrosion or potential recalls of copper pipe.[3]  Nor does the bare assertion that "the nature of scientific investigation demands a higher standard than a rush to conclude," suffice to generate more than "metaphysical doubt" regarding the factual questions.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  But Mr. Hall also opines, based on his experience and his direct observation, that a bend in the copper pipe could have contributed to the damage to the copper pipe.  This is an arguably non-speculative opinion as to a potential alternative reason why the pipe burst.  Although Mr. Hall

---

[3]Moreover, the homeowners policy excludes damage caused by "Smog, rust *or other corrosion*, or dry rot" and "Mechanical breakdown, latent defect, inherent vice, or any quality in the property that causes it to damage or destroy itself."  Even if Mr. Hall opined that the pipe burst due to corrosion or a manufacturing defect, which he does not, it is not clear that the opinion would help the insureds at all.

does not state how likely it is that the bend in the pipe caused the damage or compare that likelihood to the likelihood of freezing, the Court is wary of choosing one expert's opinion over another on a motion for summary judgment.

This case deals with the rupture of an uninsulated copper pipe filled with water in an unheated attic during a sustained period of freezing temperatures.  In the present posture of a motion for summary judgment, it is not the role of the Court to weigh the expert testimony or decide what actually caused the pipe to burst, but solely to determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  It is a close question, but the Court will deny ASI's motion at this time.  Nonetheless, the Court may revisit the question of causation in light of the fully-developed record at the close of trial in the context of a Rule 50 motion for judgment as a matter of law.

**C.     Delivery of the Policy**

The Court will address the insureds' alternative argument against summary judgment for the purpose of simplifying the issues at trial.  The insureds argue that there are disputed questions of fact regarding whether ASI informed them of the freeze exclusion in their policy.  They cite cases standing for the proposition that an insurer cannot assert an exclusion which is not in the copy of the policy provided to the insured, "because the insured will otherwise assume the desired coverage exists." *Louisiana Maint. Svcs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252-53 (La. 1993) (citing *Spain v. Travelers Ins. Co.*, 332 So.2d 827, 833 (La. 1976)).  However, these cases deal with the failure to comply with Louisiana Revised Statutes § 22:873 (former § 22:634), which requires delivery of the written policy to the insured. *See Spain*, 332 So.2d at 833 (holding that insurer could not assert exclusion not physically attached to the policy).  These cases do not stand for the proposition that a policy exclusion that

was actually part of the physical policy delivered to the insured cannot be enforced if it was not specifically brought to the attention of the insured.  Indeed, in Louisiana "insureds are assumed to have read the terms of their insurance policy." *Pierce v. Allstate Ins. Co.*, 542 F. Supp. 2d 495, 498 (E.D. La. 2008).  The exclusions are clearly set out in the policy.  The insureds do not provide any evidence that the written policy which contained the exclusion was not provided to them, and accordingly this argument would not preclude enforcement of the freeze exclusion.

### IV.  Conclusion

Accordingly, for the foregoing reasons,

IT IS ORDERED that ASI Lloyds' motion for summary judgment (Rec. Doc. 23) is DENIED.

New Orleans, Louisiana, this 16th day of February, 2011.

                                                                                        _____
                                                                                        **UNITED STATES DISTRICT JUDGE**